| | |
|---|---|
| **DANNY PATTERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-337** |
| **BLUE OFFSHORE BV** *et al.* | **SECTION: "G"(3)** |

## ORDER AND REASONS

This litigation arises out of a maritime accident that occurred off the coast of Russia. Before the Court is Defendant Blue Offshore BV's ("Blue Offshore") "Re-Urged Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)."[1] For the reasons that follow, the Court will deny the motion.

## I. Background

### A.     Factual Background

In his complaint, Plaintiff Danny Patterson alleges that he injured his knee and leg on August 21, 2012 while working for Blue Offshore as a Jones Act Seaman on the vessel "M/V Simon Stevin," then located off the coast of the Russian Federation.[2] Patterson, claiming negligence, alleges that Defendants FMC Technologies, Inc. ("FMCTI"), FMC Eurasia, LLC ("FMC Eurasia"), FMC Kongsberg Subsea AS ("FMC Kongsberg"), Aker Solutions, Inc. ("Aker"), Aker Subsea AS ("Aker Subsea"), and Blue Offshore "jointly and severally" caused his injuries, which rendered him unfit for duty.[3] Specifically, Patterson alleges that FMCTI, FMC Eurasia, FMC Kongsberg, Aker, and

---

[1]  Rec. Doc. 53.

[2]  Rec. Doc. 1 at 2; Rec. Doc. 20 at 1.

[3]  Rec. Doc. 1 at 2–3, 5; Rec. Doc. 73 at 1–2.

Aker Subsea served as contractors charged with providing subsea umbilical equipment and technical supervision on the project where he sustained his injuries.[4] According to Patterson: (1) the FMC defendants and Aker provided "unsafe, faulty, and improper" umbilical equipment; (2) FMCTI, FMC Eurasia, and the Aker defendants failed to perform their contracted work safely or provide technical supervision; (3) FMCTI, FMC Eurasia, and Aker breached the terms of their contracts, to which Patterson was a third-party beneficiary; (5) the Aker defendants failed to remedy the unsafe umbilical equipment; and (5) Blue Offshore failed to provide Patterson with a safe place to work.[5]

## B.     Procedural Background

Patterson filed the present lawsuit on February 22, 2013.[6] On July 3, 2013, Blue Offshore filed a "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)."[7] Patterson filed an opposition on July 23, 2013.[8] On August 2, 2013, with leave of Court, Blue Offshore filed a reply in further support of its motion.[9] That same day, Patterson, with leave of Court, filed a supplemental opposition.[10] On September 20, 2013, Blue Offshore filed a "Motion to Stay Discovery Pending

---

[4] Rec. Doc. 1 at 3; Rec. Doc. 73 at 1–2.

[5] *Id.* at 3–4.

[6] Rec. Doc. 1. Aker filed an answer on May 20, 2013, and Blue Offshore filed an answer on June 26, 2013. Rec. Doc. 6; Rec. Doc. 17. Patterson filed his "First Supplemental and Amended Complaint" on July 11, 2013; Blue Offshore and FMCTI both filed answers on July 23, 2013. Rec. Doc. 20; Rec. Doc. 23; Rec. Doc. 24. Aker filed an answer on July 25, 2013. Rec. Doc. 28.

[7] Rec. Doc. 19.

[8] Rec. Doc. 27.

[9] Rec. Doc. 34.

[10] Rec. Doc. 37.

Resolution of Motion to Dismiss for Lack of Personal Jurisdiction,"[11] and Patterson filed a "Motion to Compel Discovery."[12] Blue Offshore filed an opposition to Patterson's motion on October 1, 2013, and Patterson filed an opposition to Blue Offshore's motion on the same day.[13] On October 8, 2013. the Court: (1) denied without prejudice Blue Offshore's Motion to Dismiss; (2) ordered that limited discovery be taken from Blue Offshore; and (3) denied as moot Patterson's Motion to Compel and Blue Offshore's Motion to Stay Discovery.[14]

Blue Offshore re-urged its "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)" on February 21, 2014.[15] Patterson filed an opposition to Blue Offshore's re-urged motion on March 11, 2014.[16] On April 11, 2014, with leave of Court, Blue Offshore filed a reply in further support of its motion.[17] Patterson filed his "First Supplemental and Amending Complaint" on May 13, 2014, adding FMC Eurasia, FMC Kongsberg, and Aker Subsea as defendants.[18] FMCTI filed an answer on June 9, 2013; Aker filed an answer in June 12, 2014.[19]

---

[11] Rec. Doc. 42.

[12] Rec. Doc. 43.

[13] Rec. Doc. 46; Rec. Doc. 47.

[14] Rec. Doc. 49 at 3.

[15] Rec. Doc. 53.

[16] Rec. Doc. 55.

[17] Rec. Doc. 63.

[18] Rec. Doc. 73.

[19] Rec. Doc. 82; Rec. Doc. 84.

## II. Parties' Arguments

**A.** **Blue Offshore's Arguments in Support of its "Re-Urged Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)"**

In its "Memorandum in Support of Re-Urged Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2),"[20] Blue Offshore contends that the Court lacks personal jurisdiction over it because (1) Patterson's "conclusory statement that Blue Offshore 'is a foreign company within the jurisdiction of this Honorable Court' is legally unsupportable," since (2) there is no factual nexus between Patterson's claims and the contacts he asserts, and (3) the substance of the alleged contacts is insufficient to support a finding that Blue Offshore has purposefully availed itself of the privilege of conducting activities within the United States.[21] In fact, Blue Offshore argues, "the only relation" it has with the present case "is the common name it shares with Blue Offshore Projects BV," ("BOP"), which is a "separate entity with which [Patterson] entered into a contract."[22]

Blue Offshore further argues that there is no nexus between Patterson's claims and Blue Offshore's alleged contacts with the United States, even if the Court finds that Blue Offshore "somehow indirectly owed" Patterson "a duty through BOP" and "breached that duty.[23] According to Blue Offshore, Patterson served as an independent contractor for BOP, not Blue Offshore, and since he was an independent contractor for BOP, Patterson cannot base his claims on an employment

---

[20] Rec. Doc. 53–1.

[21] *Id.* at 5–6.

[22] *Id.*

[23] *Id.* at 7 (citing *Anderson v. GlobalSantaFe Offshore Servs.*, 924 F.Supp.2d 738 (E.D. La. 2013) (Vance, J.); *Freudensprung v. Offshore Tech. Servs., Inc.*, 397 F.3d 327 (5th Cir. 2004)).

relationship or a contractual relationship with Blue Offshore.[24] Blue Offshore further argues that Patterson's "cause of action (unsafe working conditions) does not arise out of the contract or his alleged recruitment in the United States, but instead relates to acts or omissions alleged to have occurred in a foreign country."[25]

Blue Offshore next contends that even if there is a factual nexus between Patterson's claims and Blue Offshore's contacts with the forum, the contacts Patterson alleges do not show that either Blue Offshore or BOP have purposefully availed themselves of the protections of Louisiana or United States.[26] These contacts, which, according to Blue Offshore, constitute (1) making three telephone calls; (2) "sending e-mails;" and (3) arranging "one-time round-trip transportation" arrangements to and from the United States, do not suffice to establish specific jurisdiction over Blue Offshore or BOP.[27] Blue Offshore further maintains that Patterson's alleged recruitment in the United States does not provide a basis for the exercise of personal jurisdiction over it or BOP, because: (1) no representative of Blue Offshore ever visited the United States in connection with Paterson's recruitment; (2) any "targeting" of the United States leading to Paterson's recruitment "was based on the prior foreign employment experience with another foreign entity," and not upon Paterson's citizenship; (3) neither Blue Offshore nor BOP advertised in United States newspapers; (4) Paterson's contract "was for a limited duration, is not an employment contract, and does not

---

[24] *Id.*

[25] *Id.* at 8 (citing *O'Quinn World Indus. Constructors, Inc.*, 874 F.Supp. 143, 146 (E.D. Tex. 1995) *aff'd sub nom. O'Quinn v. World Indust. Const.*, 58 F.3d 471 (5th Cir. 1995)). Blue Offshore contends that BOP conducted the recruitment activities. *Id.* at 8–9.

[26] *Id.* at 8–9 (citing *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 475 (1985)).

[27] *Id.* at 8 (citing *Frisella v. Transoceanic Cable Ship Co.*, 181 F.Supp. 2d 644, 649 (E.D. La. 2001) (Feldman, J.)).

provide for recurring travel to and from the United States."[28] Accordingly, Blue Offshore argues, Patterson has failed to show purposeful availment by Blue Offshore or BOP, and therefore cannot invoke this Court's jurisdiction under Federal Rule of Civil Procedure 4(k)(2).[29]

Finally, Blue Offshore argues that because Patterson's contract contemplates that Patterson would "perform all services as an independent contractor in a foreign country," and Patterson was injured in a foreign country, "[a]ny preliminary communications directed to the United States 'rested on nothing but the mere fortuity'" that Paterson happened to reside in the United States.[30] According to Blue Offshore, these contacts are insufficient to "subject a Dutch company with absolutely no presence in the United States to personal jurisdiction in this Court to defend claims arising out of an incident that otherwise has absolutely no connection to this forum."[31]

## B. Patterson's Arguments in Opposition

In his "Memorandum in Opposition to Blue Offshore's Motion to Dismiss for Lack of Jurisdiction,"[32] Patterson maintains that this Court may exercise personal jurisdiction over Blue Offshore because: (1) Blue Offshore actively sought and recruited Patterson from Texas; (2) Blue

---

[28] *Id.* at 9 (citing *Frisella*, 181 F.Supp.2d. at 649; *Cossaboon v. Maine Med. Center*, 600 F.3d 25, 39 (1st. Cir. 2010)).

[29] *Id.* (citing *Anderson*, 924 F.Supp.2d at 745 ("[R]ecruiting and hiring a plaintiff in the forum state, with nothing more, is not sufficient to establish specific jurisdiction when the cause of action arises from injuries abroad."); *Johnson v. PPI Tech. Servs., LP*, Nos. 11-2773, 12-1534, 2013 WL 2404237 (E.D. La. May 31, 2013) (Barbier, J.) (concluding that "fleeting contacts," such as (1) listing a United States address on an insurance policy, (2) the company's part-time engagement of an accountant in the United States, and (3) the presence of the part-time accountant's records in the United States, "are not sufficient to confer jurisdiction under Rule 4(k)(2)).

[30] *Id.* at 10 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)).

[31] *Id.* (citing *Freudensprung*, 397 F.3d at 344–45).

[32] Rec. Doc. 55.

Offshore provided Patterson with work documents while he was in Texas; (3) Blue Offshore required Patterson to receive a medical examination in Texas, and Patterson received one there; (4) Patterson's wife drafted his alleged contract with Blue Offshore in Texas; (6) Blue Offshore paid Patterson's air fare when he returned to Texas after his injuries, and sent someone to accompany Patterson there; (7) Blue Offshore offered Patterson a nominal settlement after he had returned to Texas following his injuries; and (8) two of the four individuals working on the project in which Patterson was injured were from the United States.[33] Further, Paterson argues, the alleged facts that Blue Offshore "abandoned" him at a Texas hospital and made him a nominal settlement offer form part of his general maritime claims and his claims for maintenance and cure.[34]

Patterson asserts that Blue Offshore is the proper defendant in this case, because: (1) Patterson's contract states that the agreement is between Blue Offshore and Patterson, (2) "all of the recruiting e-mails and e-mails confirming employment" were signed by Evert-Jan van Wijk, as "Director" of Blue Offshore, not BOP; and (3) Patterson believed that Blue Offshore was his employer.[35] Paterson further contends that even if Patterson had a relationship with BOP, he may still have had a "borrowing relationship" with Blue Offshore, since he took all of his day-to-day

---

[33] *Id.* at 1; 5–10 (pointing to nine e-mail messages purportedly exchanged between alleged Blue Offshore employee Evert-Jan Van Wijk and Patterson, which Patterson maintains demonstrate "the heavy recruitment of Patterson," who was then in Texas, by alleged Blue Offshore employee Evert-Jan Van Wijk, and citing *Shipley v. Excell Marine Co.*, No. 07-3671, 2007 WL 3046638 (E.D. La. Oct. 18, 2007) (Fallon, J) in support of the proposition that Blue Offshore's decision to pay for Patterson's air fare and send someone to Texas with Patterson constituted "further contacts" with Texas).

[34] *Id.* at 9–10.

[35] *Id.* at 2 (citing *Wheatley v. Gladden*, 660 F.2d 1024, 1026 (4th Cir. 1981) in support of the proposition that "an employee's understanding as to the identity of his employer is a relevant consideration when looking to determine an employment relationship.").

instructions from an employee of Blue Offshore.[36] Patterson further argues that Blue Offshore should

be precluded from making "employment arguments" that are beyond the scope of its Motion to

Dismiss, since Patterson has not yet conducted discovery on this topic.[37] Patterson also argues, in the

alternative, that his affidavit provides sufficient evidence to support a finding of a borrowing

relationship.

Patterson next asserts that Federal Rule of Civil Procedure 4(k)(2) supports the exercise of

jurisdiction in the present case, because courts have exercised jurisdiction pursuant to that Rule in

general maritime cases where "the defendant has sufficient minimum contacts with the United States

as a whole but is not subject to jurisdiction in any particular state,"[38] and because, under that Rule,

courts may look to the totality of a defendant's contacts with the United States when determining

whether to exercise jurisdiction.[39] In the present case, Patterson argues, "Blue Offshore conducted

specific, sufficient activities in the United States relevant to this matter which now justify asserting

specific jurisdiction over Blue Offshore."[40]

---

[36] *Id.* at 2–3 (citing *Spinks v. Chevron Oil Co.*, 507 F.3d 216, 224 (5th Cir. 1975) and *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 216, 224 (5th Cir. 1980) in support of the proposition that "[u]nder the Jones Act, an employee may have two employers," and citing *Volyrakis v. M/V Isabelle*, 668 F.3d 863, 866 (5th Cir. 1982); *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969); *Dennis v. Calm C's, Inc.*, No. 10-876, 2011 WL 3898045 (E.D. La. Sept. 2, 2011) (Lemelle, J.); and *Matias v. Taylors Int'l. Servs.*, No. 09-3256, 2010 WL 3923885, (E.D. La. Sept. 29, 2010) (Africk, J.), in support of the proposition that "[c]ontrol is the determining factor as to whether an entity is a borrowing employer under the Junes Act")).

[37] *Id.* at 3–4.

[38] *Id.* at 4 (citing, as examples, *Hunter v. Serve-Tec, Inc.*, No. 07-9009,  2009 WL 2447999 (E.D. La. Aug. 6, 2009) (Englehardt, J); *World Tanker Carriers Corp. v. M/V Ya Maw-Laya*, 99 F.3d 722-23 (5th Cir. 1996)).

[39] *Id.* at 4–5 (citing, to illustrate this proposition, *Hunter*, 2009 WL 2447999 at *5; *Adams v. Unione Mediterranea di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004); *Johnson v. PPI Tech. Servs., LP,* Nos. 11-2773, 12-1534, 2013 WL 2404237 (E.D. La. May 31, 2013) (Barbier, J.)).

[40] *Id.* at 5. Patterson notes that courts applying Federal Rule of Civil Procedure 4(k)(2) have found that GlobalSantaFe Offshore Services, Inc., a purported Cayman Islands company, conducted sufficient business in the

8

According to Patterson, courts have held that activities similar to Blue Offshore's suffice to establish jurisdiction.[41] For example, Patterson points to *Clark v. Moran Towing and Transportation Co.* et al.,[42] a case in which the district court allegedly acknowledged the significance of the fact that a Jones Act claim arose out of an employment relationship formed while the plaintiff was in Louisiana.[43] Similarly, Patterson argues, in *Coats v. Penrod Drilling Corporation*,[44] the United States Court of Appeals for the Fifth Circuit acknowledged that the defendant "had returned [the] plaintiff to Mississippi" for medical treatment following the plaintiff's injury.[45] Paterson argues that in the present case, as in *Clark,* Blue Offshore formed an employment relationship with him while he was in Texas, and that here, as in *Coats*, Blue Offshore transported him (accompanied by another individual) to Texas so that he could get medical treatment.[46]

---

United States, on the whole, to support federal jurisdiction. *Id.* (citing *Foster v. GlobalSantaFe Offshore Servs.*, No. 13-65, Rec. Doc. 16 (E.D. La. Aug. 6, 2013) (Berrigan, J.); *Johnson*, 2013 WL 2404237).

[41] *Id.* at 10.

[42] 738 F.Supp. 1023 (E.D. La. 1990) (Sear, J.).

[43] Rec. Doc. 55 at 11.

[44] 5 F.3d 877, 844 (5th Cir. 1993).

[45] Rec. Doc. 55 at 11.

[46] *Id.* at 11–12. Patterson also cites, without discussing, *Lionheart Development, LLC v. APEX Building Systems, LLC* et al., No. 8-4070, 2009 WL 35348 (E.D. La. Jan. 5, 2009) (Vance. J) and *Home Decor of Elmwood Oaks, LLC v. Jiyou Arts and Frames Co.*, No. 8-762, 2009 WL 273193 (E.D. La. Jan. 23, 2009) (Vance, J), in support of the proposition that "both cases involv[ed] a finding of jurisdiction based upon a foreign company's limited dealings with the subject state." *Id.* at 12.

## C. Blue Offshore's Arguments in Further Support of its Motion

In its "Reply Memorandum in Support of Re-Urged Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2),"[47] Blue Offshore asserts that because Patterson's contract "explicitly and unambiguously" describes him as a "self-employed contractor," and identifies BOP (and not Blue Offshore) as the signatory, Patterson's "attempts to blend the distinct corporate identities of Blue Offshore and BOP lack legal and evidentiary support."[48] Further, Blue Offshore argues, since the contract identifies BOP as the signatory, and BOP (rather than Blue Offshore) paid Patterson, Patterson's belief that Blue Offshore was his employer is "manifestly unreasonable here."[49]

According to Blue Offshore, Patterson's claims against it (rather than against BOP) are predicated solely upon a "borrowed servant" theory, making his contacts with BOP "simply not relevant" to whether the Court has personal jurisdiction over Blue Offshore under Federal Rule of Civil Procedure 4(k)(2).[50] Blue Offshore alleges that it has no offices in the United States, employs no United States citizens, does no business and performs no services in the United States, and is a

---

[47] Rec. Doc. 63.

[48] *Id.* at 1. *See also Id.* at 3–4 (contending (1) that Patterson acquiesced to handwritten changes in the contract indicating that the contract was between Patterson and BOP, (2) BOP, not Blue Offshore, paid Patterson; (3) Jan-Evert Van Wijk was not a Blue Offshore employee at the time Patterson was injured). Blue Offshore cites *Delhomme Ind., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1059 n. 25 (5th Cir. 1982) in support of the proposition that the handwritten changes to Patterson's contract control the contract's interpretation, and cites *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62–63 (1995), in support of the proposition that because Patterson's wife "supplied the contract, any ambiguities must be resolved against [Patterson].").

[49] *Id.* at 4. Blue Offshore also argues that the Court should not consider any settlement offers made to Patterson, as these are inadmissible under Federal Rule of Evidence 408. *Id.*

[50] *Id.* at 2.

wholly foreign-owned entity.[51] Further, Blue Offshore contends that (1) Patterson's contract was executed in the Netherlands; (3) Patterson sustained his alleged injury in Russian waters; and (4) Blue Offshore "was not the contractual employer of any U.S. citizens" aboard the M/V Simon Stevin at the time of the incident.[52] In light of these alleged facts, Blue Offshore maintains Patterson has not shown that this Court should exercise jurisdiction over Blue Offshore under any theory, including Federal Rule of Civil Procedure 4(k)(2).

Blue Offshore further argues that although the Court presently need not determine whether Patterson was a borrowed employee of Blue Offshore, the Court should consider, for jurisdictional purposes, Patterson's arguments regarding *where* the alleged borrowing occurred.[53] On this point, Blue Offshore maintains that: (1) Van Wijk, who allegedly gave Patterson instructions, "was never located in the United States" when he allegedly exerted control over Patterson; and (2) Patterson never performed any work in the United States pursuant to Van Wijk's directions.[54] Since an employer's "right to control or actual exertion of control" would be "a guiding factor in determining Jones Act employment status under a borrowed servant theory,"[55] and "all of the acts allegedly

---

[51] *Id.* at 3.

[52] *Id.* Citing *Anderson* and *O'Quinn*, Blue Offshore alleges that courts have found that workplace injuries sustained abroad do not arise out of the recruiting function, and therefore that recruiting-related contacts are irrelevant for jurisdictional purposes. *Id.* at 5.

[53] *Id.* at 5 (citing *Brown v. Parker Drilling*, 410 F.3d 166, 173 (5th Cir. 2005) in support of the proposition that "employment status is a necessary prerequisite to a Jones Act claim"; and *Lauritzen v. Larsen*, 345 U.S. 571, 588 (1953) in support of the proposition that "maintenance and cure is an implied obligation that arises out a seaman's employment").

[54] *Id.* at 6.

[55] *Id.* (citing, as illustrative of the factors employed by courts to determine borrowed employee status, *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977); *Ruiz v. Shell Oil Co.,* 413 F.2d 310, 312–13 (5th Cir. 1969)).

constituting control [in the present case] occurred in foreign countries," Blue Offshore asserts that Patterson's negligence claims against it lack a sufficient nexus with the United States.[56]

Finally, Blue Offshore maintains that, "even assuming the existence of a factual nexus between the contacts alleged and [Patterson's] claims," Blue Offshore's alleged "correspondence and telephone calls" do not constitute "minimum contacts" sufficient to subject it to personal jurisdiction in the United States.[57] Indeed, Blue Offshore argues, *Clark v. Moran Towing & Transportation Co.,* upon which Patterson "principally relies," is factually distinguishable because the defendant in *Clark* made an "in-person visit" to the jurisdiction, engaged in a recruitment campaign there, and "generally advertise[d] there."[58] Here, Blue Offshore argues, the fact that Patterson "turned out to be" a United States citizen is "truly fortuitous, and is not a sufficient basis on which to premise the exercise of personal jurisdiction."[59] Blue Offshore also tries to distinguish Patterson's cases involving GlobalSantaFe Offshore Services, Inc.[60] on the basis that, in those cases, GlobalSantaFe performed administrative functions in Texas and paid the plaintiffs from Texas**,** whereas Blue Offshore did not do any administrative or payroll work in the United States.[61] Further, Blue Offshore

---

[56] *Id.* at 6–7.

[57] *Id.* at 7.

[58] *Id.* at 8.

[59] *Id.* at 8–9.

[60] *Foster v. GlobalSantaFe Offshore Serv.*, 2013 WL 401275l; *Johnson v. PPI Tech. Servs. LP*, 926 F. Supp.2d at 885.

[61] Rec. Doc. 63 at 9.

contends, the United States Court of Appeals for the Fifth Circuit has held that the recruitment of United States citizens to perform work abroad does not give rise to personal jurisdiction.[62]

Accordingly, Blue Offshore asserts, Patterson "has failed to discharge his burden to show that Blue Offshore's contacts with the United States are anything more than fortuitous and attenuated;" consequently, because Patterson "has not and cannot show that Blue Offshore had minimum contacts with either Louisiana or the United States as a whole," the Court cannot exercise jurisdiction over it, and should therefore dismiss Patterson's claims against it for lack of personal jurisdiction.[63]

### III. Law and Analysis

#### A. Standard on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2)

When a district court considers a defendant's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the United States Court of Appeals for the Fifth Circuit instructs that:

> The plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence. [Courts] must accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation. In considering a motion to dismiss for lack of personal jurisdiction a district court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."[64]

---

[62] *Id.* at 9–10 (citing *Freudensprung*, 379 F.3d at 344–45; *Hot Oil & Gas,* 801 F.2d at 778; *Patterson*, 764 F.2d at 1147; *Frisella,* 181 F.Supp.2d at 649; *Moncrief Oil Intern. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). Blue Offshore also cites *Antonini v. Blue Gate Farm LLC* in support of the proposition that the court found "no personal jurisdiction where contacts are limited to emails, phone calls, and the execution of a contract in Louisiana." No. 12-2386, 2012 WL 6632111 at *3 (E.D. La. Dec. 19, 2012) (Zainey, J.).

[63] *Id.* at 10–11.

[64] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (citations omitted).

Blue Offshore contends that because Patterson has had an opportunity to conduct written discovery and depositions, he must show "the existence of personal jurisdiction by a preponderance of the evidence," rather than by *prima facie* evidence.[65] The United States Court of Appeals for the Fifth Circuit has held that although plaintiffs must "ultimately" establish jurisdiction by a preponderance of the evidence, a district court resolving a motion to dismiss that is supported only by "affidavits or affidavits plus discovery materials" need only require that the plaintiff make a *prima facie* showing.[66] If, however, the court holds an "evidentiary hearing" on personal jurisdiction, and both sides have the opportunity to present their cases fully in that hearing, the plaintiff must establish personal jurisdiction by a preponderance of the evidence.[67]

Blue Offshore argues that an "evidentiary hearing" that triggers the preponderance of evidence standard "simply constitutes affording the parties an opportunity to submit evidence."[68] In *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, the United States Court of

---

[65] Rec. Doc. 53-1 at 3 (citing *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326-27 (5th Cir. 1996)).

[66] *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (emphasis added). In *Walk Haydel*, the court provided that:

**[U]nless there is a full and fair hearing, [the district court] should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts**. **Moreover, at this stage the plaintiff is required to present only a prima facie case for personal jurisdiction** . . . [I]f the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. **Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.** *Id.* (emphasis added).

[67] *Id.* at 241–42.

[68] Rec. Doc. 53–1 at 4 (citing *Felch*, 92 F.3d at 326-27).

Appeals for the Fifth Circuit reversed the district court's order dismissing a party's claims for lack of personal jurisdiction, explaining a pretrial evidentiary hearing confined to jurisdiction will trigger the preponderance of evidence standard if it provides "both sides" with "the opportunity to present their cases fully."[69] The court defined such a hearing, and described its purpose, as follows:

> A pretrial evidentiary hearing is intended to serve as a substitute for the resolution of factual and legal disputes relevant to jurisdiction at trial. As such, both parties must be allowed to submit affidavits and to employ all forms of discovery, subject to the district court's discretion and as long as the discovery pertains to the personal-jurisdiction issue. Furthermore, if requested by the parties, the district court often should convene a hearing where it entertains live testimony. In *Data Disc*, the Ninth Circuit held that at a hearing where a court requires more than a *prima facie* case it should allow the plaintiff "to go[] beyond the written materials."[70]

Considering whether a hearing sufficient to trigger the preponderance of evidence standard occurred in the case before it, the court reasoned that:

> **Without live testimony in this case—where examination of [witnesses] . . . would help resolve factual disputes dispositive of the jurisdictional question—the court could not require more than a *prima facie* case** from Delasa. Because the district court did not conduct a full-blown evidentiary hearing, it should have required Delasa to establish only a prima facie case for personal jurisdiction.[71]

In the present case, the Court ordered the parties to conduct discovery related to jurisdiction,[72] witnesses have been deposed, and the parties have presented evidence deriving from

---

[69] 517 F.3d at 237; 241–42.

[70] 517 F.3d at 241–42 (citing *Data Disc, Inc. v. Sys. Tech. Assocs.* 557 F.2d 1280, 1285 (9th Cir. 1977).

[71] *Id.* at 242 (emphasis added). *See also Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d at 327 n. 20 (concluding that an in-person hearing in which the court "opened the door to the presentation of evidence" constituted an "evidentiary hearing.").

[72] Rec. Doc. 49.

discovery in support of their jurisdictional arguments.[73] Blue Offshore misconstrues the law when it asserts that conducting discovery and submitting evidence upon motion is sufficient to trigger the preponderance of the evidence standard. In the absence of an evidentiary hearing, as here, Patterson need only make a *prima facie* showing that the court may exercise personal jurisdiction over Blue Offshore.

**B.      Whether the Court Has Jurisdiction over Blue Offshore**

Patterson argues that this Court has jurisdiction over Blue Offshore pursuant to Federal Rule of Civil Procedure 4(k)(2). Blue Offshore, in turn, contends that it has no relationship with the Eastern District of Louisiana or with the United States, and that BOP's contacts, even if imputed to Blue Offshore, do not establish jurisdiction.

Federal Rule of Civil Procedure 4(k) provides:

**(k) Territorial Limits of Effective Service.**

**(1) In General.** Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>
> (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
>
> (C) when authorized by a federal statute.

---

[73] *See, e.g.* Rec. Doc. 55–2 (providing a transcript of Evert-Jan Van Wijk's deposition); Rec. Doc. 53-3 (furnishing a transcript of Patterson's deposition).

**(2) Federal Claim Outside State-Court Jurisdiction**. For a claim that arises under federal law, serving a summons or filing a waiver of service[74] establishes personal jurisdiction over a defendant if:

> **(A)** the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

> **(B)** exercising jurisdiction is consistent with the United States Constitution and laws.

Courts may exercise jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) where: (1) the claims against the defendant arise under federal law; (2) the defendant "does not concede to jurisdiction in another state"; and (3) "the defendant has sufficient ties to the United States as a whole to satisfy due process concerns."[75] In *Submersible Sys. Inc. v. Perforadora Central, S.A. de C.V.*, the United States Court of Appeals for the Fifth Circuit noted that because Federal Rule of Civil Procedure 4(k)(2) "draws its authority directly from federal law," the due process required by the Rule "is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment."[76] In deciding Federal Rule of Civil Procedure 4(k)(2) cases, however, the United States Court of Appeals for the Fifth Circuit has consistently employed the same standards developed

---

[74] No return of summons as to Blue Offshore has been entered into the record in this matter, although Blue Offshore has filed an answer. *See* Rec. Doc. 17. In their briefing related to the present motion, the parties do not address whether Blue Offshore has been served or has waived service.

[75] *Adams v. Unione Mediterranea di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2001). *See also World Tanker Carriers Corp. v. MV Ya Mawlaya,* 99 F.3d 717, 721 (5th Cir. 1996) (holding that Federal Rule of Civil Procedure 4(k)(2) permits courts to exercise jurisdiction in cases where a defendant has "insufficient contacts with any single state" to support jurisdiction under state long-arm statutes, but has "sufficient contacts with the United States as a whole to satisfy due process concerns.").

[76] 249 F.3d 413, 420 (5th Cir. 2001).

in cases addressing whether personal jurisdiction comports with Fourteenth Amendment due process.

process.[77]

Under the Fifth Circuit's Fourteenth Amendment due process doctrine, jurisdiction comports with the Due Process Clause where:

> [A] defendant "has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[78]

The Supreme Court has recognized two categories that satisfy these requirements: (1) "general jurisdiction," in which the defendant's operations in the forum state are "so continuous and systematic as to render the [defendant] essentially at home" in that state; and (2) "specific jurisdiction," which "aris[es] out of or relate[s] to the defendant's contacts with the forum."[79]

---

[77] Thirteen known cases decided by the United States Court of Appeals for the Fifth Circuit cite Federal Rule of Civil Procedure 4(k)(2). Of these thirteen cases, ten apply jurisdictional standards developed in Fourteenth Amendment due process cases. *See, e.g. Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (applying "specific jurisdiction" analysis); *World Tanker Carriers*, 99 F.3d at 723 (applying "minimum contacts" analysis); *Adams*, 364 F.3d at 651 (applying minimum contacts analysis); *Submersible*, 249 F.3d at 420 (applying minimum contacts analysis); *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001) (applying "general jurisdiction" analysis);. *See also Nabulsi v. Bin Zayed al Nahyan*, 383 Fed. App'x 380 (5th Cir. 2010) (affirming the district court's decision based on general jurisdiction analysis); De *Leon v. Shih Wei Nav. Co., Ltd.*, 269 Fed. App'x 487, 489-90 (5th Cir. 2008) (affirming district court's decision based general jurisdiction analysis); *Stutzman v. Rainbow Yacht Adventures Ltd.*, 265 Fed. App'x 402 (2008) (affirming district court's decision based on general jurisdiction and specific jurisdiction principles); *R & B Falcon Drilling (Intern. & Deepwater), Inc. v. Noble Denton Group*, 91 Fed. App'x 317, 321 (5th Cir. 2004) (applying minimum contacts analysis).

[78] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[79] *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014) (citing *Goodyear Dunlop Tires, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2013); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 414 n. 8 (1984)). *See also Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) ("Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.").

In the present case, Patterson alleges that this Court may exercise "specific jurisdiction" over Blue Offshore because "Blue Offshore actively sought and recruited [him] from Texas, and sufficient activities took place in Texas[.]"[80]  In *Quick Technologies, Inc. v. Sage Group PLC*, the United States Court of Appeals for the Fifth Circuit, addressing whether the court could exercise specific jurisdiction under Federal Rule of Civil Procedure 4(k)(2), provided that:

> [S]pecific jurisdiction over a nonresident corporation is appropriate when [1] the corporation has purposefully directed its activities at the forum state and [2] the litigation results from alleged injuries that arise out of or relate to those activities.[81]

After setting forth this test, the court addressed whether the defendant had sufficient contacts with the United States, rather than with any specific state,[82] employing this analysis to consider whether "exercising jurisdiction is consistent with the United States Constitution and laws" under Federal Rule of Civil Procedure 4(k)(2)(B).[83]

Since Patterson invokes this Court's specific jurisdiction over Blue Offshore under Federal Rule of Civil Procedure 4(k)(2), the Court, applying *Adams*, will consider whether: (1) his claims arise under federal law; (2) Blue Offshore concedes jurisdiction in another state. Next, the Court, applying *Quick Technologies*, will complete the constitutional analysis required by Federal Rule of Civil Procedure 4(k)(2) by considering whether: (1) Blue Offshore has purposefully directed its

---

[80] Rec. Doc. 55 at 5.

[81] 313 F.3d at 344 (citations omitted).

[82] *Id.* ("QTI contends that the following contacts with the United States establish grounds for specific jurisdiction over Sage Group . . .").

[83] *Id.* ("In this case, there is no dispute that QTI's trademark infringement claims arise under federal law and neither side has claimed that Sage Group is subject to the jurisdiction of the courts of any state. Thus, the only issue is whether exercise of jurisdiction is 'consistent with the Constitution and laws of the United States.'").

activities at the United States; and (2) the litigation results from alleged injuries that arise out of or relate to those activities.

### 1. Whether Patterson's Claims Arise Under Federal Law

To invoke federal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), it is necessary under *Adams* (and under the plain text of the rule) that the plaintiff's claims arise under federal law. The United States Supreme Court stated in *City of Chicago v. International College of Surgeons* that: "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."[84] A plaintiff's well-pleaded complaint may raise issues of federal law where "[1] federal law creates the cause of action or [2] the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[85]

In his complaint, Patterson: (1) alleges that Blue Offshore "fail[ed] to provide [him] with a safe place to work, and other violations of the Jones Act"; (2) seeks maintenance and cure under the general maritime law; (3) seeks punitive damages under the general maritime law; and (4) claims "negligence" against all defendants, including Blue Offshore.[86] Under *World Tanker Corp v. MV Ya Mawlaya*, "federal law includes admiralty cases for the purposes of [Federal] Rule [of Civil Procedure] 4(k)(2)."[87] Patterson, alleging Jones Act and general maritime claims, has stated causes of action that arise under federal law for the purposes of Federal Rule of Civil Procedure 4(k)(2).

---

[84] 522 U.S. 156, 163 (1997).

[85] *Id.* at 164.

[86] Rec. Doc. 1 at 4–5.

[87] 99 F.3d at 723.

## 2. Whether Blue Offshore Concedes to Jurisdiction in Another State

As Federal Rule of Civil Procedure 4(k)(2)(A) provides (and *Adams* recognized), the Rule only applies where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction"  Blue Offshore has offered no evidence to suggest that it has conceded to jurisdiction in any other state. Accordingly, this prong of Federal Rule of Civil Procedure 4(k)(2) has been satisfied.

## 3. Whether Blue Offshore has Sufficient Ties to the United States

Finally, to invoke federal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the plaintiff must demonstrate that "exercising jurisdiction is consistent with the United States Constitution and laws"—in other words, that "the defendant has sufficient ties to the United States as a whole to satisfy constitutional due process concerns."[88] Where specific jurisdiction is alleged, the plaintiff must demonstrate that "the corporation has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[89]

### a. Whether Blue Offshore has Purposefully Directed its Activities at the United States

According to Patterson, the following contacts with the United States permit the Court to exercise jurisdiction over Blue Offshore: (1) recruiting him while he was in Texas; (2) sending him work documents from Texas; (3) requiring him to obtain a medical examination in Texas; (4) seeking a draft contract from Patterson's wife in Texas; (5) paying for Patterson's airfare to

---

[88] 364 F.3d at 651.

[89] *Quick Technologies*, 313 F.3d at 344.

Texas after he was injured; (6) "ha[ving] someone accompany Patterson back to Texas," who "brought Patterson from the plane to a local Texas hospital"; and (6) offering to settle his personal injury claims after he had returned to Texas.[90] Blue Offshore denies that it has any contacts with the United States, and maintains that BOP, an allegedly separate entity, has only (1) made three phone calls to U.S. numbers, (2) sent a handful of e-mail messages to Patterson, and (3) purchased a plane ticket "to and from a project of limited duration."[91] These contacts, according to Blue Offshore, do not permit the court to exercise jurisdiction over it in a manner consistent with due process.[92]

In support of his argument that these alleged contacts establish jurisdiction over Blue Offshore, Patterson cites and discusses in greatest detail two cases: *Clark v. Moran Towing and*

---

[90] Rec. Doc. 55 at 1; 5–10. Blue Offshore argues that the settlement offer Patterson allegedly received is inadmissible under Federal Rule of Evidence 408 and therefore should not be considered by this Court in its resolution of the present motion. The United States Court of Appeals for the Fifth Circuit has not directly addressed whether courts may consider settlement offers for jurisdictional purposes, although it has cited, in an unpublished opinion, a decision from the United States Court of Appeals for the Eighth Circuit addressing the relationship between settlement negotiations and personal jurisdiction. *See Aqua-Dyne Inc. v. Les Enterprises Claude Chagnon Inc.*, 237 F.3d 632 at *6 (5th Cir. Nov. 3, 2000) ("[C]ourts have hesitated to use unsuccessful settlement discussions as contacts for jurisdictional purposes.") (quoting *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d, 519). In *Digi-Tel*, the court noted that "[g]iving jurisdictional significance to such activities may work against public policy by hindering the settlement of claims." 89 F.3d at 525. The United States Court of Appeals for the Federal Circuit, addressing the relationship between settlement negotiations and personal jurisdiction, has concluded that:

> Although the [Federal] Rules [of Evidence] do not explicitly make evidence of such negotiations inadmissible to establish personal jurisdiction, the policy underlying the Rules supports an approach that fosters settlement of . . . claims. Indeed, this policy squarely invokes one of the considerations enumerated by the Supreme Court for the second prong of a proper Due Process analysis, namely, 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies.'

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1351 (Fed. Cir. 1998) (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980). This Court concurs that the "interstate judicial system's interest in obtaining the most efficient resolution of controversies" militates against considering Blue Offshore's alleged settlement offer for jurisdictional purposes. Accordingly, it will not consider Blue Offshore's offer.

[91] Rec. Doc. 53–1 at 5–6.

[92] *Id.*

*Transportation Company et al*[93] and *Coats v. Penrod Drilling Corporation*.[94] According to Patterson, *Coats* is relevant because the court in *Coats* "noted that the defendant had returned plaintiff to Mississippi for purposes of receiving medical treatment."[95] In *Coats,* the United States Court of Appeals for the Fifth Circuit rejected the defendant's argument that the district court lacked personal jurisdiction over it, and affirmed the district court's judgment against the defendant, stating:

> **[The defendant's] recruitment activities in Mississippi that led to his hiring, such as holding a meeting in the state and buying ads in papers that circulated in the state, are the sort of "reach[ing] out" to Mississippi that the Supreme Court saw as creating personal jurisdiction in *Burger King*.** [The defendant] further cemented that bond by signing a contract obligating it to return [the plaintiff] there once a year for as long as he worked for [the Defendant].
>
> Then, after [the plaintiff's] injury, he and [the defendant] jointly decided that he would return to Mississippi for treatment. [The defendant] flew him there and began paying his medical bills. **Flying an employee to Mississippi and assuming a financial obligation there is not a "random," "fortuitous," or "attenuated" act that is an improper basis of jurisdiction**. Backing out of that commitment, an act that ultimately cost [the defendant] over $20,000 in the judgment below, was also a choice by [the defendant] that could lead it to foresee appearing in a Mississippi court.[96]

---

[93] 738 F.Supp. 1023 (E.D. La. 1990) (Sear, J.).

[94] 5 F.3d 877 (5th Cir. 1993). Patterson also cites *Lionheart Development, LLC v. Apex Building Systems, LLC et al.* and *Home Decor of Elmwood Oaks, LLC v. Jiyou Arts and Frames Company, et al.*, in support of the proposition that "both cases involv[ed] a finding of jurisdiction based upon a foreign company's limited dealings with the forum state." Rec. Doc. 55 at 12. In *Lionheart*, a District Court in the Eastern District of Louisiana held that it could exercise personal jurisdiction over a defendant who negotiated contracts with parties in the forum state, conducted in-person sales in the forum state, and inspected and repaired homes he sold in the forum state. No. 08-4070, 2009 WL 35348 at *3 (E.D. La. Jan. 5, 2009) (Vance, J.). In *Home Decor*, a District Court in the Eastern District of Louisiana held that it could exercise personal jurisdiction where the parties negotiated what was intended to become a long-term business relationship in which the defendant shipped manufactured products to Louisiana. No. 08-762, 2009 WL 273193 at *3-*4 (E.D. La. Feb. 15, 2013) (Vance, J.). These cases provide few factual points of comparison with the present case.

[95] Rec. Doc. 55 at 11.

[96] 5 F.3d at 884 (emphasis added) (citations omitted).

Additionally, Patterson cites the *Clark* decision.[97] There, a District Court in the Eastern District of Louisiana concluded that the defendant was subject to the personal jurisdiction of the court, reasoning that:

> The plaintiff filed a Jones Act suit against his employer to recover for personal injuries. **As part of its purposeful recruitment activities directed toward Louisiana, the defendant interviewed Louisiana citizens and it advertised in various local newspapers**. These purposeful activities resulted in the employment of several Louisiana citizens as seamen.[98]

Patterson also cites *Shipley v. Excell Marine Company*, where a District Court in the Eastern District of Louisiana concluded that it could exercise specific jurisdiction over a defendant, stating that:

> **Here, the Defendant specifically targeted the Plaintiff and made a recruiting call to the Plaintiff while he was residing within Louisiana**. Apparently, the Plaintiff was employed with another company and the Defendant, through its recruiting call, convinced the Plaintiff to leave his employment and accept the offer of employment extended by the Defendant. **This direct and targeted recruitment is such that the Defendant should have reasonably anticipated being sued in the forum state**. This situation is the opposite of what the court faced in *Frisella v. Transocean Cable Ship Co.*, 181 F.Supp.2d 644, 648-49 (E.D.La.2002) (Feldman, J.). In this case, the defendant hired crew members through the Seafarer's International Union ("SIU") under the terms of an agreement between the two parties. *Id*. at 646.The defendant hired the plaintiff through the SIU to work aboard one of its ships. *Id.* The court held that the defendant had little control over the SIU's activities and that "the connection between [plaintiff's] injury and SIU's hiring practices is tenuous as best."*Id*. Here, the Defendant had complete control over its recruiting activities in light of the fact that one of its employees recruited the Plaintiff directly.

> To further support a finding of specific jurisdiction, the **Plaintiff states that he has received medical treatment in Louisiana and the Defendant has paid for some of his medical treatment**. As stated above, the courts in *Hall, Potts and Coats* **all point to the fact that the plaintiff received medical treatment in the forum state and that the defendant paid for at least a portion of such medical costs**. Indeed, it seems as though the Defendant was involved in the Plaintiff's medical care. The Plaintiff has produced a progress note provided by Orthopaedic Center of Monroe

---

[97] Rec Doc. 55 at 11.

[98] 738 F. Supp. at 1030 (emphasis added).

that was sent directly to the Defendant that states: "We will now start this patient in a lumbar program [ ] with physical therapy as soon as it is approved by workman's comp." In total, these facts support a finding of specific jurisdiction.[99]

Blue Offshore points out that it did not advertise in local media, and sent no representative to Texas to recruit Patterson,[100] citing, in support of its argument, *Frisella v. Transoceanic Cable Ship Co.*[101] In that case, a District Court in the Eastern District of Louisiana concluded that it could not exercise personal jurisdiction over an employer who had hired the defendant through an agreement with a labor union.[102] There, the court reasoned that although the case was similar to *Coats* in that the defendant provided for the plaintiff's transportation to the forum state,

> **There is no evidence here that [the defendant] participated in [the plaintiff's] decision to go to Louisiana for treatment. [The defendant's] nurse merely released [the plaintiff] with instructions to see a doctor. It is also important to point out that [the defendant's] maintenance payments to [the defendant] amounted to only $264.** It would be an abusive distortion of this Court's jurisdiction to find that [the defendant] should have anticipated being sued in Louisiana based on its minuscule Louisiana involvement. [The defendant] did not purposely direct its activities, or reach out, to Louisiana in the same way that the defendant did in *Coats.*[103]

Blue Offshore cites several cases that purportedly demonstrate that its contacts (or BOP's contacts) do not support personal jurisdiction. In one such case, *Freudensprung v. Offshore Technical Services, Inc.* the United States Court of Appeals for the Fifth Circuit reasoned that:

---

[99] 2007 WL 3046638 at *4.

[100] Rec. Doc. 53–1 at 9; Rec. Doc. 63 at 8.

[101] 181 F. Supp. 2d 644, 649 (E.D. La. 2002) (Feldman, J.) (emphasis added).

[102] *Id.* at 646–47 (emphasis added).

[103] *Id.*

> [T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.[104]

In another such case cited by Blue Offshore, *Holt Oil & Gas Corp. v. Harvey*, the United States Court of Appeals for the Fifth Circuit concluded that the contacts between the defendant and the forum did not support the exercise of specific jurisdiction, because:

> Although the contractual relationship between Holt and Harvey may have been cemented in Texas, the significance of this fact is diminished by the contract provision specifying that Oklahoma law would govern the agreement. Our conclusion is further bolstered by the fact that performance of the contract was centered in Oklahoma rather than Texas. Given that the material performance occurred in Oklahoma, the fact that Harvey mailed payments to Texas does not weigh heavily in our determination. Finally, the exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law. These communications to Texas rested on nothing but the mere fortuity that [Holt] happens to be a resident of the forum.[105]

Further, Blue Offshore cites several decisions from the United States District Court for the Eastern District of Louisiana. In *Anderson v. GlobalSantaFe Offshore Services*, the court concluded that "merely contracting with a resident of Louisiana and sending money to him here do not indicate that GlobalSantaFe intended to avail itself of the privilege of doing business here."[106] In *Johnson v. PPI Technology Services, LP*, which Blue Offshore also cites, the court held that it did not have personal jurisdiction over a defendant that "once listed a Houston address on an insurance policy,"

---

[104] *Freudensprung*, 379 F.3d 327, 344–45 (5th Cir. 2004).

[105] 801 F.2d 773, 778 (citations and internal quotation marks omitted).

[106] 924 F. Supp.2d 758, 746 (E.D. La. 2013) (Vance, J.) (citations omitted).

and engaged an employee of a co-defendant to "do[] some accounting work for [the defendant] in Houston [, who] . . . maintain[ed] her own copy of [the defendant's] records in Houston."[107] Finally, Blue Offshore cites *Antonini v. Blue Gate Farm, LLC*, in which a District Court in the Eastern District of Louisiana stated that "communications merely related to the formation of a contract or sale are typically not sufficient to support specific jurisdiction. Rather, the cause of action must in some way arise out of those communications, which is not the case here."[108]

None of these cases address the constellation of facts allegedly present in this case, in which the defendant: (1) negotiated with the plaintiff while the plaintiff was in the United States; (2) ensured that the plaintiff received a medical examination in the United States before traveling abroad to work; (3) paid for the plaintiff to travel abroad from the United States to finalize the contract (which was itself drafted in the United States); and (4) was involved in accompanying the plaintiff to the United States so that he could receive medical treatment here.

Since *Coats, Clark*, *Frisella*, and *Shipley* addressed similar facts, they are most instructive. In this case, as in *Coats, Clark*, and *Shipley,* it is claimed that Blue Offshore communicated directly with Patterson in order to recruit him.[109] The fact that Blue Offshore did not engage in mass media advertising or a large-scale recruitment campaign (as in *Coats* and *Clark*) does not make jurisdiction inappropriate. In *Shipley*, the court found that the defendant's decision to engage in "direct and targeted recruitment,"even without any apparent mass media solicitation or large-scale campaigns,

---

[107] No. 11-2773 c/w No. 12-1534, 2013 WL 2404237 (E.D. La. May 31, 2013) (Barbier, J.) (citations omitted).

[108] No. 12-2386, 2012 WL 6632111 at *3 (E.D. La. Dec. 19, 2012) (Zainey, J.).

[109] In this respect, the present case is unlike *Frisella,* where the defendant recruited the defendant through a labor union.

"was such that the defendant should have reasonably anticipated being sued in the forum state." Like the defendant in *Shipley*, Blue Offshore (or BOP) allegedly communicated directly with Patterson in Texas via e-mail with the purpose of recruiting him; toward that end, it made arrangements for Patterson to travel abroad from Texas, and sought assurances from Patterson that he would obtain the necessary medical reports while he was in Texas. In both *Coats* and *Shipley*, the courts found that the defendants' involvement with the plaintiffs' medical activities in the forum was significant for jurisdictional purposes. In the present case, Blue Offshore was allegedly involved in Patterson's medical activities in Texas both *before and after* his work abroad, requiring Patterson to complete a medical examination in Texas before he traveled abroad, and "ha[ving] someone accompany Patterson back to Texas" after Patterson was injured.[110] Patterson claims that this person not only flew to Texas with him, but also "brought [him] to a local Texas hospital" for care.[111] Such close involvement with Patterson's medical activities in Texas brings this case more closely in line with *Coats* and *Shipley*. Thus, as in *Coats, Clark*, and *Shipley*, Blue Offshore's contacts demonstrate that it has purposefully directed its activities at the forum in question—here, the United States.[112]

      **b.**     **Whether the Patterson's Claims Result from Blue Offshore's Contacts with the United States**

Having established that Blue Offshore has made the requisite purposefully directed contacts with the United States, the Court now considers whether, under *Quick Technologies*, Patterson's

---

[110] Rec. Doc. 55 at 5–9.

[111] *Id.* at 9.

[112] Patterson also argues that the Court "should appreciate that the entire Russian Kirinskoye project involved only four individuals employed by Blue Offshore," of whom two were recruited and hired from the United States, but cites no authority to explain why these alleged facts are relevant for jurisdictional purposes. *See* Rec. Doc. 55 at 10.

claims result from alleged injuries that arise out of or relate to Blue Offshore's activities in the United States. Patterson argues that his "entire Jones Act claim arises out of the employment relationship which was established in Texas."[113] Blue Offshore, in turn, argues that "there is no nexus between the contacts alleged and [Patterson's] . . . cause of action," since Patterson was allegedly an independent contractor, and his claims do not arise out of his purported recruitment in the United States.[114]

In support of his arguments, Patterson relies on the *Coats* and *Clark* decisions. According to Patterson, *Clark* acknowledges the "significance that the underlying Jones Act claim [at issue in that case] was necessarily predicated upon the relationship that was formed while the plaintiff was in [his home state]."[115] There, the United States District Court for the Eastern District of Louisiana concluded that:

> A Jones Act suit is a suit by a seaman against an employer for his failure to provide the employee with a safe place to work. **Therefore, this suit "arises out of or relates to" the employment relationship, which was established pursuant to defendant's purposeful conduct and activities directed toward Louisiana and its citizens.**[116]

Patterson also maintains that *Coats* supports the exercise of jurisdiction in this case because, in *Coats*, the United States Court of Appeals for the Fifth Circuit "found it significant that the ongoing issue of medical treatment to the injured seaman (or lack thereof) was placed at issue by the

---

[113] Rec. Doc. 55 at 11.

[114] Rec. Doc. 53–1 at 7 (citing *Anderson*, 2013 WL 594201 at *5–*6, in support of the proposition that the court in that case noted a "lack of connection between [a] tort claim and [the] alleged contacts presented").

[115] Rec Doc. 55 at 11.

[116] 738 F. Supp. at 1030 (emphasis added).

defendant in Mississippi."[117] In that case, which is quoted above, the court reasoned that the defendant's "relationship" with the Plaintiff (which began with recruitment in the forum and led to the defendant flying him back to Mississippi and paying some of his medical expenses) was such that the defendant "could reasonably anticipate being haled into court in Mississippi as a result of its relationship with Coats."[118]

Blue Offshore claims that Patterson's contract "clearly designates [Patterson] as a self-employed contractor, not an employee."[119] In support of the proposition that "where a contract does not indicate [an] employment relationship, a Plaintiff's tort claims do not arise out of or relate to the contract for purposes of the jurisdictional analysis," Blue Offshore cites *Freudensprung*, in which the United States Court of Appeals for the Fifth Circuit reasoned that:

> **At the outset, we note that [the plaintiff] is not a party to the contract between OTSI and WWAI—the Offshore Personnel Supply Agreement—which [the plaintiff] cites as evidence of WWAI's minimum contacts with the forum state** . . . Even assuming that the instant controversy could be deemed to arise out of the Offshore Personnel Supply Agreement, the minimum contacts resulting from this agreement, viewed in conjunction with the other contacts alleged by [the plaintiff] do not constitute the minimum contacts necessary to comport with constitutional due process. **. . . [T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.**[120]

---

[117] Rec. Doc. 55 at 11–12.

[118] 5 F.3d at 884.

[119] Rec. Doc. 53–1 at 7.

[120] *Freudensprung*, 379 F.3d 327, 344–45 (5th Cir. 2004)(emphasis in original) (internal quotation marks omitted).

Blue Offshore also contends that Patterson's injury "does not arise out of or relate to the contract or his alleged recruitment in the United States, but instead relates to acts or omissions alleged to have occurred in a foreign country."[121] In support of that proposition, Blue Offshore cites *O'Quinn v. World Indus. Contractors, Inc.*, in which a District Court in the Eastern District of Texas determined that it could not exercise personal jurisdiction over a recruiting agency that hired the plaintiff, reasoning that:

> **[T]he cause of action (unsafe working conditions) does not arise out of nor is it connected with the recruiting function**. **Plaintiff belatedly argues that he was promised safe working conditions when he was recruited, so his action springs from a breach of contract related to the recruiting done by Merit**. An examination of Plaintiff's Original Complaint, however, reveals that he does not assert any cause of action that even resembles breach of contract. All of his allegations sound in negligence.[122]

In order to satisfy the second prong of the *Quick Technologies* specific jurisdiction test, Patterson's claims must result from alleged injuries that arise out of or relate to Blue Offshore's activities in the United States. In the present case, Patterson alleges that he was injured in part because "Blue Offshore failed to provide [him] with a safe place to work," and violated the Jones Act in other unspecified ways.[123] He also claims that Blue Offshore has failed to pay maintenance and cure benefits.[124] According to Patterson, these claims arise out of his "employment relationship"

---

[121] 874 F.Supp. 143 (E.D. Tex. 1995).

[122] 874 F. Supp. 143, 146 (E.D. Tex. 1995) (emphasis added) *aff'd sub nom. O'Quinn v. World Indus. Const.*, 68 F.3d 471 (5th Cir. 1995).

[123] Rec. Doc. 1 at 4.

[124] Rec. Doc. 1 at 5.

with Blue Offshore, which began when Blue Offshore recruited him in the United States.[125] Although the parties dispute whether Patterson was an employee, a borrowed employee, or an independent contractor, the Court, in resolving the present motion, resolves all factual conflicts in Patterson's favor. Here, the parties' purported evidence does not conclusively resolve whether Patterson was an employee, a borrowed employee, or an independent contractor.[126] In light of Patterson's allegations that he was employed by Blue Offshore as a Jones Act seaman, *Clark* is instructive. Here, as in *Clark*, Patterson was allegedly recruited in the United States; likewise here, as in *Clark*, Patterson now claims that Blue Offshore failed to provide him with a safe place to work, in violation of the Jones Act.[127]

While *O'Quinn* and *Anderson* both noted that "the cause of action [of] (unsafe working conditions) does not arise out of nor is it connected with the recruiting function,"[128] the plaintiff in *Anderson* only alleged that the defendant contracted with him and sent him money in Louisiana,[129] while the *O'Quinn* plaintiff argued that "he was promised safe working conditions when he was recruited," making his action against a co-defendant one of "breach of contract related to the

---

[125] Rec. Doc. 55 at 11.

[126] Both parties cite to evidence in support of their arguments on this point. *Compare* Rec. Doc. 55 at 3 ("At a minimum, an issue of fact exists as to whether Blue Offshore BV was the borrowing employer of Danny Patterson at the time of this incident given that its director, Evert-Jan, was controlling the day-to-day activities of Danny Patterson at all relevant times.") (citing Rec. Doc. 55-3) *with* Rec. Doc. 53–1 at 7 ("[T]he contract clearly designates [Patterson] as a self-employed contractor, *not an employee*.") (citing Rec. Doc. 27-1 at 2).

[127] Also in light of Patterson's claim that he was an employee of Blue Offshore, *Freudensprung* does not control the present issue, since it addressed only whether a *contract* and the incidents of its execution and performance provided a sufficient basis for personal jurisdiction, but not whether an alleged *employment relationship* may do so.

[128] *Anderson*, 924 F.Supp.2d. at 745 (citing *O'Quinn*, 874 F.Supp. at 146).

[129] *Id.* at 746.

recruiting done" by that co-defendant. In the present case, Patterson alleges that his claims arise out of his employment relationship with Blue Offshore, and that several important events in this purported relationship (including Patterson's medical examination, Blue Offshore's pursuit of medical clearance for Patterson, and Patterson's trip to the Netherlands) occurred before he traveled to Russia.[130] These contacts are more substantial than those present in *Anderson*. Moreover, unlike the plaintiff in *O'Quinn*, Patterson alleges that his employment relationship with Blue Offshore, rather than a recruiter's promise of safe working conditions, connects his claims against Blue Offshore to the United States.

Patterson further argues that Blue Offshore, in allegedly escorting him back to Texas but failing to pay for medical treatment upon his return, "place[d] Patterson's ongoing medical treatment at issue in the state of Texas."[131] These alleged facts are similar to the facts at issue in *Coats*, at least as far as Patterson's claims for maintenance and cure are concerned. Recognizing that the Court must resolve all factual conflicts in Patterson's favor, Patterson's allegation that Blue Offshore had someone escort him back to a Texas hospital, but then failed to pay for his medical treatment, supports a finding that Patterson's claim for Maintenance and Cure arises out of Blue Offshore's alleged conduct in Texas.

### 4. Whether *Patterson* has Made a *Prima Facie* Showing

Federal courts may exercise jurisdiction under Federal Rule of Civil Procedure 4(k)(2) when a (1) a plaintiff's claims arise under federal law; (2) a defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) a defendant has sufficient ties to the United States to

---

[130] Rec. Doc. 55 at 8.

[131] *Id.* at 12.

satisfy constitutional due process concerns. Patterson has stated claims under the Jones Act, for maintenance and cure under the general maritime law, and for punitive damages under the general maritime law. Accordingly, his claims arise under federal law. Furthermore, Blue Offshore has not conceded to jurisdiction in any state's courts. Finally, Patterson alleges that Blue Offshore engaged in targeted recruitment of Patterson in Texas, and involved itself in Patterson's medical examination and care. In doing so, Patterson has made a *prima facie* showing that Blue Offshore has engaged in activities (or "minimum contacts") that were purposefully directed at the United States. Patterson also alleges that (1) he was an employee of Blue Offshore, (2) his injuries arose out of this alleged employment relationship, which purportedly was formed in Texas, and (3) that Blue Offshore has failed to pay him maintenance and cure, even though it allegedly flew Patterson back to Texas and had someone escort him to a hospital there. Based on these allegations, the Court finds that Patterson has met his burden of making a *prima facie* showing that his claims arise from Blue Offshore's alleged contacts with the United States. Consequently, the Court may exercise personal jurisdiction over Blue Offshore.

### C.     Whether Blue Offshore is the Appropriate Defendant

In addition to disputing whether the Court has jurisdiction over Blue Offshore, the parties dispute whether Blue Offshore is the proper party defendant in this case. Patterson contends that Blue Offshore is the proper party defendant because: (1) the "contract itself states that it is between Blue Offshore BV and plaintiff Danny Patterson"; (2) Patterson believed his employer to be Blue Offshore, not BOP; and (3) even if Patterson had a relationship with BOP, he was a borrowed employee of Blue Offshore.[132] Denying that it is a proper party defendant, Blue Offshore argues that:

---

[132] Rec. Doc. 55 at 2–3.

(1) Blue Offshore and BOP are separate entities; (2) Blue Offshore "did not enter into any contract with" Patterson; and (3) Blue Offshore "did not pay" Patterson "any money for services performed."[133] In resolving the present motion, the Court accepts as true Patterson's uncontroverted allegations, and resolves all factual conflicts in Patterson's favor. The facts regarding whether Blue Offshore or BOP signed a contract with Patterson are presently in conflict.[134] Thus, Blue Offshore's arguments regarding whether it formed a contract with Patterson do not undermine Patterson's *prima facie* case for personal jurisdiction. Since the facts regarding whether Blue Offshore or BOP contracted with Patterson are in conflict, the Court, in resolving the present motion, need not reach Blue Offshore's argument that BOP is separate from Blue Offshore; nor need it reach Patterson's argument that he was a borrowed employee of Blue Offshore.

## IV. Conclusion

Patterson has made a *prima facie* showing that (1) his claims arise under federal law; (2) Blue Offshore has not conceded to the jurisdiction of the courts of any other state; (3) Blue Offshore has purposefully directed its activities at the United States; and (4) the present litigation results from alleged injuries that arise out of or relate those activities. Accordingly,

---

[133] Rec. Doc. 53–1 at 1; Rec. Doc. 63 at 1–2. After making this initial argument, Blue Offshore makes the remainder of its arguments against jurisdiction in the alternative. *See* Rec. Doc. 53–1 at 5 ("**Even assuming it would be proper to . . . impute the contacts of BOP to Blue Offshore**, which it is not . . .") (emphasis added); *Id.* at 6 ("**Even assuming** a factual nexus [between BOP's alleged contacts and Patterson's claims], the substance of the contacts is insufficient to support a finding that Plaintiff has set for [sic] a *prima facie* case, much less carried his burden and shown by a preponderance of the evidence . . .").

[134] Blue Offshore has appended an alleged copy of the contract to its briefing on this motion; this document is purportedly signed by an individual titled "Blue Offshore Projects bv, Director," but states that "[T]his contract is issued this 11 June 2012 between Blue Offshore bv [sic] and Danny Patterson of the United States of America." Rec. Doc. 53–2 at 1–2.

**IT IS ORDERED** that Defendant Blue Offshore BV's "Re-Urged Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)"[135] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___18th___ day of September, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[135] Rec. Doc. 53.