# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANNY PATTERSON**                               **CIVIL ACTION**

**VERSUS**                                        **CASE NO. 13-337**

**BLUE OFFSHORE BV, et al.**                      **SECTION: "G" (3)**

## ORDER AND REASONS

      This litigation arises from an accident that occurred at sea off the coast of Russia. Presently pending before the Court is defendant FMC Technologies' "Motion for Summary Judgment"[1] Having reviewed the motion, the memoranda in support, the memoranda in opposition, and the applicable law, the Court will deny the pending motion.

## I. Background

### A.   *Factual Background*

      In his complaint, Plaintiff Danny Patterson alleges that he injured his knee and leg on August 21, 2012 while working for Blue Offshore as a Jones Act Seaman on the vessel "M/V Simon Stevin," then located off the coast of the Russian Federation.[2] Patterson, claiming negligence, alleges that  Defendants Blue Offshore BV, Aker Solutions, Inc. ("Aker"), and  FMC Technologies, Inc. ("FMCTI") "jointly and severally" caused his injuries, which rendered him unfit for duty.[3] In an amended complaint, Patterson identifies FMC Eurasia, LLC ("FMC Eurasia"), FMC Kongsberg Subsea AS  ("FMC Kongsberg"), and Aker Subsea AS ("Aker Subsea")  as likewise "indebted unto

---

[1] Rec. Doc. 59.

[2] Rec. Doc. 1 at p. 2; Rec. Doc. 20 at p. 1.

[3] Rec. Doc. 1 at 2–3, 5.

[him] for all damages to which he is entitled to receive[.]"[4]  Patterson alleges that FMCTI, FMC Eurasia, FMC Kongsberg, Aker, and Aker Subsea served as contractors charged with providing sub-sea umbilical equipment and/or technical supervision on the project where he sustained his injuries while working for Blue Offshore, and that each defendant is liable to him in connection with their performance of their role in the project.[5] His allegations against each party are as follows.

First, Patterson contends that FMCTI failed to: (1) "provide proper and safe umbilical equipment for the job in question;" (2) "take steps to ensure that the contracted work was performed in a safe and workmanlike manner;" (3) "take steps to remedy the improper and unsafe umbilical equipment once it was known or should have been known to it through the exercise of reasonable care;" and (4) "satisfy, and hence  breach of [sic] the terms of its contract of which [he] was a third party beneficiary."[6]

Second, Patterson asserts that Aker failed to: (1) "provide proper and unsafe umbilical equipment for the job in question;" (2) "take steps to remedy the improper and unsafe umbilical equipment once it was known or should have been known to it through the exercise of reasonable care;" (3) "satisfy, and hence breach of [sic] the terms of its contract of which [he] was a third party beneficiary."[7]

Third, Patterson contends that Blue Offshore failed to "provide [him] with a safe place to

---

[4] Rec. Doc. 73 at pp. 1–2.

[5] Rec. Doc. 1 at pp. 3–4; Rec. Doc. 73 at pp. 1–2.

[6] Rec. Doc. 1 at p. 3.

[7] *Id.* at pp. 3–4.

work and [committed] other violations of the Jones Act as will be shown at trial."[8]   Fourth, Patterson contends that FMC Eurasia and Aker Subsea "failed to properly provide . . . technical supervision."[9]   Fifth, Patterson asserts that FMC Kongsberg "failed to properly provide . . . equipment" for the project.[10]

### B.    Procedural Background

Patterson filed the present lawsuit on February 22, 2013.[11] On May 20, 2013, Aker filed an answer.[12] On June 26, 2013, Blue Offshore filed an answer.[13] On July 3, 2013, Blue Offshore filed a "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)."[14] On July 11, 2013, Paterson filed a "First Supplemental and Amended Complaint," adding allegations regarding his residence, the location of the accident, and a jury demand.[15] On July 23, 2013, Blue Offshore and

---

[8] *Id.* at p. 4.

[9] Rec. Doc. 73 at p. 2.

[10] *Id.*

[11] Rec. Doc. 1. Aker filed an answer on May 20, 2013, and Blue Offshore filed an answer on June 26, 2013. Rec. Doc. 6; Rec. Doc. 17. Patterson filed his "First Supplemental and Amended Complaint" on July 11, 2013. Rec. Doc. 20. Blue Offshore and FMCTI both filed answers on July 23, 2013. Rec. Doc. 23; Rec. Doc. 24. Aker filed an answer on July 25, 2013. Rec. Doc. 28.

[12] Rec. Doc. 6.

[13] Rec. Doc. 17.

[14] Rec. Doc. 19. Patterson filed an opposition to the motion on July 23, 2013, and filed a supplemental opposition on August 2, 2013, with leave of Court. Rec. Doc. 27; Rec. Doc. 32. Blue Offshore filed a reply in further support of its motion on August 2, 2013.

[15] Rec. Doc. 20.

FMCTI filed answers.[16] On July 25, 2013, Aker filed an answer.[17]

On September 20, 2013, Blue Offshore filed a "Motion to Stay Discovery Pending Resolution of Motion to Dismiss for Lack of Personal Jurisdiction,"[18] and Patterson filed a "Motion to Compel Discovery."[19] On October 8, 2013 the Court (1) denied without prejudice Blue Offshore's Motion to Dismiss; (2) ordered that limited discovery be taken from Blue Offshore; and (3) denied as moot the two pending discovery-related motions.[20]

On February 21, 2014, Blue Offshore re-urged its "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)."[21] On April 8, 2014, FMCTI filed the instant "Motion for Summary Judgment."[22] On May 13, 2014, Patterson filed a "First Supplemental and Amending Complaint," adding FMC Eurasia, FMC Kongsberg, and Aker Subsea as defendants.[23]On June 9, 2014, FMCTI filed an answer to Patterson's amended complaint.[24] On June 12, 2014, Aker filed an

---

[16] Rec. Doc. 23; Rec. Doc. 23.

[17] Rec. Doc. 28.

[18] Rec. Doc. 42.

[19] Rec. Doc. 43.

[20] Rec. Doc. 49 at 3 (denying as moot Rec. Doc. 42; Rec. Doc. 43).

[21] Rec. Doc. 53. Patterson filed an opposition to the motion on March 11, 2014. Rec. Doc. 55. On April 11, 2014, with leave of Court, Blue Offshore filed a reply in further support of its motion. Rec. Doc. 62.

[22] Rec. Doc. 59. Patterson filed an opposition to the motion on April 22, 2014. Rec. Doc. 66. On June 6, 2014, with leave of Court, FMCTI filed a reply in further support of the motion. Rec. Doc. 81. On June 12, 2014, Patterson filed a supplemental memorandum in opposition to the motion. Rec. Doc. 86.

[23] Rec. Doc. 73.

[24] Rec. Doc. 82.

answer.[25]

On August 26, 2014, FMC Kongsberg filed a "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)."[26] On September 16, 2014, Aker Subsea filed a "Motion to Dismiss."[27]

On September 18, 2014, the Court denied Blue Offshore's re-urged "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to 12(b)(2)."[28] On October 16, 2014, Blue Offshore filed a "Motion for Evidentiary Hearing and Reconsideration," urging the Court to hold an evidentiary hearing and reconsider its September 18, 2014 order denying its motion to dismiss.[29]

On November 10, 2014, the Court denied without prejudice FMC Kongsberg's "Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)," permitting the parties to conduct jurisdictional discovery and granting FMC Kongsberg leave to re-urge its pending motion after January 12, 2015.[30] On February 10, 2015, FMC Kongsberg re-urged its "Motion to Dismiss

---

[25] Rec. Doc. 84.

[26] Rec. Doc. 90. Patterson filed an opposition to the motion on September 9, 2014. Rec. Doc. 91. On April 15, 2014, with leave of Court, FMC Kongsberg filed a reply in further support of its motion. Rec. Doc. 95.

[27] Rec. Doc. 97. Patterson filed an opposition  to the motion on September 23, 2014. Rec. Doc. 99. On October 2, 2014, Patterson moved to continue the submission date of the motion. Rec. Doc. 100. The Court granted that motion on October 3, 2014, continuing the submission date to January 7, 2015. Rec. Doc. 101. On December 30, 2014, Patterson filed an opposition to the motion. Rec. Doc. 122. On January 5, 2015, with leave of Court, Patterson filed a reply in further support of its motion.

[28] Rec. Doc. 53.

[29] Rec. Doc. 102. Patterson filed an opposition to the motion on November 4, 2012. Rec. Doc. 105. On November 12, 2014, with leave of Court, Blue Offshore filed a reply in further support of its motion. Rec. Doc. 110.

[30] Rec. Doc. 106.

for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)."[31]

### III. Parties' Arguments

**A.     FMCTI's "Motion for Summary Judgment"[32]**

In support of the instant motion, FMCTI asserts that Patterson "will be unable to come forward with 'significant probative evidence,' or indeed any evidence, to establish his negligence claims against [FMCTI]."[33] Rather, FMCTI contends, "the available evidence establishes that [FMCTI] had no involvement or responsibilities in connection with the events that gave rise to [Patterson's] claims," preventing Patterson from establishing the duty, breach, and cause elements of a negligence claim against FMCTI.[34] FMCTI argues that its affidavits "establish that [FMCTI] did not provide, nor did it contract to provide, any equipment whatsoever for the Russian project," and also establish that "no [FMCTI] employee participated in the Russian project in any way, at any time."[35] Rather, FMCTI maintains, "the only two 'FMC' employees who were present aboard the M/V Simon Stevin on the date of [Patterson's] accident are and were employed by FMC Eurasia."[36] Indeed, FMCTI asserts, "the Affidavits in question . . . establish that [FMCTI] played no role whatsoever with respect to the Russian project generally or the work that was ongoing at the time

---

[31] Rec. Doc. 127. The motion is set for submission on March 4, 2015. Patterson filed an opposition to the motion on February 24, 2015. Rec. Doc. 129.

[32] Rec. Doc. 59.

[33] Rec. Doc. 59–1 at pp. 7–8.

[34] *Id.* at p. 8.

[35] *Id.*

[36] *Id.*

of plaintiff's injury in particular."[37]

FMCTI asserts that Patterson will not be able to offer evidence to refute these asserted facts.[38] Moreover, FMCTI contends, Patterson "acknowledged during his deposition that he did not know what FMC entity was involved in these operations and that he did not know if the 'FMC reps' aboard the vessel were employed by [FMCTI]."[39] FMCTI therefore argues that Paterson will be unable to establish the duty, breach, and cause elements of a negligence claim against it, warranting summary judgment in its favor.[40]

**B.     *Patterson's Opposition*[41]**

In opposition to FMCTI's motion, Patterson asserts that the motion is premature, because he "recently propounded discovery upon FMC and requested certain depositions," and district courts generally should not grant summary judgment before the parties have completed discovery.[42]

Patterson contends that "additional discovery is needed" in "several narrow areas" before summary judgment is proper.[43] First, Patterson asserts that discovery of a "separate agreement" regarding installation and commissioning activites identified in Article 31 of the contract between FMC Kongsberg and Gazprom Dobycha Shelf LLC "presumably" addresses the activities in which

---

[37] *Id.*

[38] *Id.*

[39] *ID.* at p. 19.

[40] *Id.*

[41] Rec. Doc. 66.

[42] *Id.* at pp. 1–2.

[43] *Id.* at p. 2.

he was allegedly injured, and should be allowed in order to "determine[] whether [FMCTI] is implicated in regard to the installation and commisioning activities."[44] Second, Patterson contends that discovery of a "preliminary agreement" between various parties should be allowed.[45] Third, Patterson argues that he received "key documents to review prior to his travel overseas," including a "Method Statement" which referenced FMCTI, and that "[t]hese documents are relevant."[46] Finally, Patterson contends that appendices related to the contract for "technical supervision" have not yet been discovered.[47]

According to Patterson, these documents are "highly relevant to the situation which gives rise to the claim in this case," since "FMC admits that one of its affiliates was responsible for the 'technical supervision of the operations,'" thereby identifying "one of the 'FMCs'" as being responsible for the supervision of the project.[48] The documents, once produced, "may directly implicate [FMCTI] in regard to the loading, installation and supervision of the umbilical reels in this matter."[49] Patterson also notes that he "seeks to depose the individuals who issued the Affidavits" relied upon by FMCTI in the instant motion, since these individuals made "broad sweeping statements to the effect that FMC Technologies did not play any role in the Russian project," and

---

[44] *Id.*

[45] *Id.* at p. 3.

[46] *Id.* at pp. 3–4.

[47] *Id.* at p. 4.

[48] *Id.* at p. 5.

[49] *Id.*

the "basis of, and extent of, their knowledge should be cross examined."[50]

Patterson also argues that "the Method Statement alone creates an issue of fact as to "[FMCTI]'s potential role in the Russian project," since it clearly references FMCTI "and not the name(s) of its related entities" and states that FMCTI is "responsible . . . for many aspects of the umbilicals including 'installation and monitoring guidelines.'"[51] With this document now in the record, Patterson contends, factual issues preclude summary judgment in FMCTI's favor.[52]

Patterson contends that, for the above reasons, the Court should deny FMCTI's motion as premature pursuant to Federal Rule of Civil Procedure 56(d).[53]

## C. FMCTI's Reply[54]

In further support of its motion, FMCTI asserts that additional discovery conducted after it filed the instant motion demonstrates that summary judgment is appropriate here, for several reasons.

First, FMCTI contends that depositions of "the employees of [FMCTI], FMC Eurasia, and FMC Kongsberg demonstrate that [FMCTI] had no involvement whatsoever in the Russian Project."[55] Specifically, FMCTI argues, FMCTI's counsel, Jeffrey David Palmer, stated in his

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at p. 6.

[54] Rec. Doc. 81.

[55] *Id.* at p. 2.

deposition that FMCTI "was not involved in the project on which [Patterson] worked."[56]

Moreover, FMCTI contends, Jorn Eide, the General Manager of FMC Eurasia, stated in his deposition that: "neither FMCTI nor its personnel were part of the Russian project," that FMCTI and FMC Eurasia "are completely separate companies," and that FMCTI's involvement "is not permitted by Russian law."[57] According to FMCTI, Eide also stated that "the two people working on the [M/V] Simon Stevin at the time of [Patterson's] accident were FMC Eurasia personnel," and were in any event supervising the installation of equipment other than the umbilical equipment that allegedly injured Patterson.[58]

Finally, FMCTI contends that Tomas Bille, FMC Kongsberg's senior legal counsel, likewise stated in his deposition that "there were no intercompany transactions" regarding the Russian project, that "neither [FMCTI] nor FMC Eurasia were involved in the installation of the umbilical system," and that FMCTI was not involved in the Russian project.[59] According to FMCTI, all three depositions, along with affidavits and evidence previously filed, demonstrate that Patterson will be unable to establish that FMCTI owed Patterson a duty, breached that duty, or caused Patterson's harm.[60]

FMCTI further maintains that "nothing in the method statement and referenced documents can change the fact that [FMCTI] was not involved in the Russian project and cannot be liable for

---

[56] *Id.* at pp. 2–3.

[57] *Id.* at p. 3.

[58] *Id.* at p. 4.

[59] *Id.* at pp. 5–6.

[60] *Id.* at pp. 6–7.

[Patterson's] damages," because FMCTI's counsel stated in his deposition that: (1) "[FMCTI] was not involved in the Russian project;" (2) he could not find the documents Patterson requested, and did not think that the documents existed "because [FMCTI] was not involved in the Russian project;" and (3) "the documents may be available from other defendants in this matter, including FMC Kongsberg and FMC Eurasia."[61]

FMCTI contends that "it is clear" from the foregoing deponents' statements that Patterson "will be unable to carry its burden of demonstrating that [FMCTI] had any duty to [Patterson]."[62] Indeed, FMCTI argues, Patterson's asserted need to file additional discovery "ignores the unmistakable testimony of Mr. Palmer which states that the documents [Patterson] seeks are not in FMCTI's possession or control."[63] FMCTI asserts that since Patterson has added FMC Eurasia and FMC Kongsberg as defendants, "there is no just reason to delay the inevitable dismissal of FMCTI, which was incorrectly sued, when the other defendants are the appropriate parties to respond to the discovery requested by plaintiff."[64]

### D.    *Patterson's Supplemental Opposition*[65]

In his supplemental memorandum in opposition to the instant motion, Patterson contends that although sufficient discovery has been taken as to Palmer, Eide, and Bille, "several critical documents have still not yet been produced by [FMCTI]," including the Method Statement and

---

[61] *Id.* at pp. 7–9.

[62] *Id.* at p. 9.

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 86.

related documents.[66] Patterson asserts that he is "now in process of filing a motion to compel for several reasons."[67] First, because summary judgment in FMCTI's favor is "premature until such documentation may be obtained and reviewed, and the author of such documentation can be determined with certainty," since these documents are "clearly listed as being generated by FMC Technologies."[68] Second, because "it is inappropriate for [FMCTI] to respond to the subject discovery by simply stating that the documents referenced in the Method Statement are 'not in possession of [FMCTI],'" since documents discoverable pursuant to Federal Rule of Civil Procedure 34 if the party "has actual possession, custody, or control, or has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a nonparty to the action."[69]

### III. Law and Analysis

#### A.    *Legal Standard: Summary Judgment*

FMCTI seeks summary judgment pursuant to Federal Rule of Civil Procedure 56. Under that Rule, a motion may be filed "at any time until 30 days after the close of discovery."[70] This Court will grant a timely motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[71] A fact is

---

[66] *Id.* at pp. 1–2.

[67] *Id.* at p. 2.

[68] *Id.* at pp. 2–3.

[69] *Id.* at p. 3 (citations omitted).

[70] Fed. R. Civ. P. 56(b).

[71] Fed. R. Civ. P. 56(a).

"material" if it "might affect the outcome of the suit under the governing law."[72] Disputes about material facts are "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[73]

When a party moves for summary judgment, this Court "construes all facts and inferences in the light most favorable to the nonmoving party."[74] Nonetheless, the opposing party has the burden of presenting "affirmative evidence in order to defeat a properly supported motion,"[75] and this burden "even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery."[76] To avoid summary judgment, the opposing party must point to "a conflict in substantial evidence."[77]

## B.   *Analysis*

FMCTI asserts that "the available evidence establishes that [FMCTI] had no involvement or responsibilities in connection with the events that gave rise to [Patterson's] claims," and that it is therefore entitled to summary judgment.[78] In support of its assertion that summary judgment in its favor is warranted here, FMCTI contends that affidavits of Jeffrey David Palmer, Jorn Eide, and

---

[72] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[73] *Id.*

[74] *Rogers v. Bromac Title Serv., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citations and internal quotation marks omitted).

[75] *Anderson*, 477 U.S. at 257.

[76] *Id.*

[77] *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

[78] *Id.* at p. 8.

Tomas Bille,[79] along with statements made by these individuals in depositions[80] "establish that [FMCTI] did not provide, nor did it contract to provide, any equipment whatsoever for the Russian project."[81] FMCTI further maintains that the documents Patterson seeks "are not in [FMCTI]'s possession or control."[82]

Patterson counters that "several critical documents have still not yet been produced by [FMCTI]," including the Method Statement and related documents,[83] and that the present motion is therefore premature and "should be denied subject to re-filing at a later date if warranted."[84] In addition to averring that insufficient discovery has taken place, Patterson further argues that "the Method Statement alone," in "clearly referenc[ing]" FMCTI, creates an issue of fact as to whether FMCTI played a role in the Russian project.[85]

Applying Federal Rule of Civil Procedure 56 here, FMCTI has submitted unrebutted affidavits and deposition transcripts in support of its assertion that it played no role in the project where Patterson was allegedly injured. Patterson asserts that he does not yet have all of the information required to oppose the present motion, and therefore requests that the Court deny the

---

[79] Rec. Doc. 59–1 at p. 8 (citing Rec. Doc. 59–3 at p. 2; Rec. Doc. 59–4 at p. 3; Rec. Doc. 59–5 at pp. 2–3).

[80] Rec. Doc. 81 at pp. 2–6 (citing Rec. Doc. 81–1; Rec. Doc. 81–2; Rec. Doc. 81–3).

[81] Rec. Doc. 59–1 at p. 8. *Accord* Rec. Doc. 81 at p. 2 ("The deposition testimony provided by employees of [FMCTI], FMC Eurasia, and FMC Kongsberg demonstrate that [FMCTI] had no involvement whatsoever in the Russian Project.").

[82] Rec. Doc. 81 at p. 9.

[83] *Id.* at pp. 1–2.

[84] Rec. Doc. 86 at p. 4.

[85] Rec. Doc. 66 at pp. 5–6.

motion as premature, pursuant to Federal Rule of Civil Procedure 56(d).[86]

### 1.     Federal Rule of Civil Procedure 56(d)

Pursuant to Rule 56(d):

> (d)     When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
>> (1)     defer considering the motion or deny it;
>>
>> (2)     allow time to obtain affidavits or declarations or to take discovery; or
>>
>> (3)     issue any other appropriate order.

In *Adams v. Travelers Indem. Co. of Connecticut*, the Fifth Circuit construed Federal Rule of Civil Procedure 56(f), the predecessor to the present-day Rule 56(d),[87] and held that the Rule:

> [A]uthorizes a district court to "order a continuance to permit affidavits to be taken or depositions to be taken or discovery to be had," if the non-movant files affidavits showing that he or she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." A non-movant seeking relief under Rule 56(f) must show: (1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact. A party "cannot evade summary judgment simply by arguing that additional discovery is needed," and may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."[88]

Requests for relief pursuant to Rule 56(d) (formerly, Rule 56(f)) are "generally favored and should be liberally granted."[89] Nonetheless, a "plaintiff's entitlement to discovery before a ruling

---

[86] Rec. Doc. 66 at pp. 6–7; Rec. Doc. 86 at p. 3.

[87] *See* CHARLES A. WRIGHT, ARTHUR R. MILLER, *ET AL.* 10B FEDERAL PRACTICE & PROCEDURE CIVIL § 2740 (3d Ed. 2014) ("When Rule 56 was rewritten in 2010, the provisions in Rule 56(f) were moved to a new subdivision (d), without any substantial changes.").

[88] *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006) (citations omitted). *See also Beattie*, 254 F.3d at 606 (holding that the nonmoving party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts," but rather "must show (1) why she needs additional discovery and (2) how that discovery will create a genuine issue of material fact.") (citations omitted).

[89] *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001)

on a motion for summary judgment is not unlimited and may be cut off when the record shows that

the requested discovery will not be likely to produce facts he needs to withstand a summary

judgment motion."[90] Indeed, "[i]f it appears that further discovery will not produce evidence creating

a genuine issue of material fact, the district court may, in the exercise of its discretion, grant

summary judgment."[91] Furthermore, if the plaintiff "has not diligently pursued discovery . . . [he]

is not entitled to relief" under the Rule.[92]

Applying these standards here, Patterson has filed into the record a sworn "Rule 56(d)

Declaration" stating, among other things, that he has "requested specific documents be produced"

by FMC, and that he "cannot present facts essential to justify his opposition" in the absence of

further discovery.[93] In his supplemental memorandum in opposition to the present motion, Patterson

asserts that "[a]lthough FMC Technologies contends, and admittedly has provided supporting

testimony, that FMC Eurasia and FMC Kongsberg were primarily involved in the Russian project,

the fact remains that the documents on the Method Statement are clearly listed as being generated

by 'FMC Technologies.'"[94] Therefore, consistent with *Adams*, Patterson has indicated (1) why he

requires additional discovery (he believes that the documents referenced in the Method Statement

will connect FMCTI to the Russian project) and (2) how discovery will create a genuine issue of

material fact here (specifically, by rebutting FMCTI's affidavits and deponents' statements that

---

[90] *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435,1443 (5th Cir. 1993).

[91] *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004).

[92] *Beattie*, 254 F.3d at 606.

[93] Rec. Doc. 66-3 at p. 1.

[94] Rec. Doc. 86 at p. 2.

16

FMCTI was not involved).[95]

The Court's inquiry does not end here, however, since a plaintiff who "has not diligently pursued discovery . . . is not entitled to relief"[96] under Rule 56(d). Patterson first pointed to the above-described discovery issues in his opposition to the instant motion, which he filed on April 22, 2014.[97] Patterson subsequently indicated on June 12, 2014 that although Palmer, Eide, and Bille had been deposed,  he was unable to obtain certain documents from FMCTI, and would file a motion to compel in order to obtain the documents.[98] Nearly eight months have elapsed since Patterson made these representations. During that time, Patterson has filed neither a motion to compel nor any further opposition into the record. In these circumstances, it appears to the Court that Patterson has not diligently pursued discovery insofar as FMCTI is concerned.

Patterson contends that "the Fifth Circuit routinely reverses the granting of summary judgment as premature when discovery is pending."[99] However, the Fifth Circuit has affirmed

---

[95] Rec. Doc. 86 at p. 1 ("Plaintiff has recently been provided the depositions of the three individuals who provided affidavits in support

[96] *Beattie*, 254 F.3d at 606.

[97] Rec. Doc. 66.

[98] Rec. Doc. 86.

[99] Rec. Doc. 66 at pp. 1–2 (citing *Galaxy Tire v. Terwilliger*, 189 F.3d 469 (5th Cir. 1999) (reversing district court's order granting summary judgment after concluding that the district court did not consider the plaintiff's Rule 56(f) affidavit"); *Xerox v. Genmoora Corp.*, 888 F.2d 345, 354–55 (5th Cir. 1989) (reversing order granting summary judgment where the plaintiff had been "unable to review the documents produced" by the time a response to the summary judgment motion was due); *Harris v. Devon Energy Prod., L.P.*, 500 Fed. App'x 267 (5th Cir. 2012) (modifying district court's judgment to dismiss plaintiffs' suit with prejudice, after finding that plaintiffs dismissed their suit to avoid an adverse ruling on summary judgment); *Gabarick v. Laurin Maritime (America), Inc.*, 406 Fed. App'x 883, 889 (5th Cir. 2010) (reversing partial summary judgment where "very little discovery [had] taken place"); *McLaughlin v. W & T Offshore, Inc.* 78 Fed. App'x 334, 336 n. 1, 339 (5th Cir. 2003) (affirming summary judgment entered upon the defendant's re-urged motion for summary judgment following the denial of the defendant's first motion as premature); *Sunbelt Sav., FSB Dalas, Texas v. Montross*, 923 F.2d 353 (5th Cir. 1991) (reversing summary judgment after the defendant failed to produce requested documents and the plaintiff filed an unsuccessful motion to compel).).

orders granting summary judgment in circumstances involving far less delay than is present in this case. For instance, in *Carriere v. Sears, Roebuck, & Co.*, the district court granted summary judgment to the defendants over the plaintiffs' assertion that "they had inadequate opportunity to conduct discovery."[100] There, the case had been pending in the district court for "over four months" before the motion for summary judgment was set for submission.[101] The plaintiffs sought "additional time to complete discovery before the summary judgment hearing," but "did not explain . . . why they had not completed discovery in the time already allotted," instead averring only that "the district court had not yet ruled" on a pending motion to remand.[102] Reasoning that "[t]he fact that a motion for remand does not excuse failing to pursue discovery diligently," the Fifth Circuit held that the district court "did not abuse its discretion in denying the plaintiffs a further continuance."[103]

Likewise, in *Beattie v. Madison County School Dist.*, the Fifth Circuit affirmed the district court's order granting summary judgment to the defendant, notwithstanding the plaintiff's assertion that she "did not become aware" that she needed to take certain depositions "until sixteen days before the discovery deadline,"and did not take the depositions earlier "because the parties were in settlement negotiations."[104] There, the plaintiff had "several months, from the time she sued" to take the depositions, but filed a Rule 56(f) motion "three days after the defendants filed their motion for

---

[100] 893 F.2d 98, 102 (5th Cir. 1990).

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] 254 F.3d at 606.

18

summary judgment."[105] Reasoning that "a party suspends discovery at his own risk," and noting that the plaintiff could have sought an extension of time for discovery before the deadline elapsed, the Fifth Circuit held that the district court "acted within its discretion in concluding that she had not pursued discovery diligently enough to warrant relief under [R]ule 56(f)."[106]

Here, the Court issued a second Scheduling Order in this matter on April 11, 2014,[107] three days after FMCTI filed the instant motion.[108] That Scheduling Order stated that discovery was to be closed on January 23, 2015.[109] On December 23, 2014, more than six months after Patterson filed his supplemental memorandum in opposition to the instant motion, the Court suspended all pending deadlines in this matter until the pending dispositive motions were resolved.[110] Although the Court suspended all pending deadlines in this matter with a month remaining before the close of discovery, Patterson filed no motion to obtain the disputed documents before that time, and has filed none since. Although requests for relief pursuant to Rule 56(d) are "generally favored and should be liberally granted,"[111] Patterson has not pursued the discovery he claims to require. Therefore, the Court finds no basis to delay ruling on the instant motion.

---

[105] *Id.*

[106] *Id.*

[107] Rec. Doc. 64.

[108] Rec. Doc. 59.

[109] Rec. Doc. 64 at p. 2.

[110] Rec. Doc. 121.

[111] *Beattie,* 254 F.3d at 606.

####        2.        Summary Judgment

####        a.        FMCTI's Affidavits and Deposition Transcripts

In support of the instant motion, FMCTI has presented affidavits and deposition transcripts in which Palmer, Eide, and Billes stated that FMCTI was not involved in the project where Patterson was injured.  FMCTI contends that these affidavits and deposition transcripts show that Patterson will be unable to establish a negligence claim against it pursuant to the General Maritime Law.[112]

To establish negligence under the General Maritime Law, the "plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'"[113] Pursuant to this legal standard, Patterson will be unable to establish that FMCTI owed him a duty, or breached that duty, or that any such breach on FMCTI's part caused him any harm, if FMCTI was not involved in the Russian project. Therefore, FMCTI's involvement in the project is a material fact.

In addition to opposing the pending motion on the basis of prematurity, Patterson has presented a copy of the "Method Statement," which appears to list FMCTI as the "Originator" of certain documents and drawings used in preparation of that document.[114]  Patterson contends that this document "alone creates an issue of fact," since it "references [FMCTI as] being the responsible

---

[112] Rec. Doc. 59–1 at pp. 7–8. Patterson does not dispute that his claim against FMCTI arises under the General Maritime Law, and also does not dispute the elements of a negligence claim under the General Maritime Law.

[113] *In re Great Lakes Dredge & Dock, LLC* 624 F.3d 201, 211 (5th Cir. 2010).

[114] Rec. Doc. 66-2 at p. 19.

party for many aspects of the umbilicals including "installing and monitoring guidelines."[115] On this point—and notwithstanding Patterson's failure to seek additional discovery—it appears that Patterson has pointed to a genuine issue of material fact. The method statements lists "FMC Technologies" as the originator of a document titled "Installation / Commissioning Procedures, Subsea-Template/Module/Manifold, SDU, Kirinskoye," among others.[116] "Construing all facts and inferences in the light most favorable"[117] to Patterson, the Court finds that this document creates am issue of material fact concerning whether FMCTI was involved in the project. Since FMCTI's involvement in the project "might affect the outcome of the suit under the governing law,"[118] FMCTI is not entitled to judgment as a matter of law on this issue.

## IV. Conclusion

FMCTI asserts that the affidavits and depositions of Palmer, Eide, and Billes demonstrate that Patterson will be unable to establish any negligence on FMCTI's part, making it entitled to judgment as a matter of law. Patterson contends that FMCTI's motion should be denied as premature. Although Patterson has not sought the documents he claimed to require in the eight months since the present motion was submitted, weighing against a continuance or denial of the instant motion on the basis of prematurity, the Court finds that Patterson has established that the Method Statement establishes a genuine issue of material fact concerning FMCTI's involvement in the project where Patterson was injured. Therefore, FMCTI is not entitled to judgment as a matter

---

[115] Rec. Doc. 66 at pp. 5–6.

[116] Rec. Doc. 66–2 at p. 19.

[117] *Rogers*, 755 F.3d at 350.

[118] *Anderson,* 477 U.S. at 248.

of law at this time. Accordingly,

**IT IS ORDERED** that FMCTI's pending "Motion for Summary Judgment"[119] is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this <u>3rd</u> day of March, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[119] Rec. Doc. 59.